IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBITIOUS PRODUCTIONS, INC., an Illinois Corporation, <br><br> Plaintiff, <br><br> v. <br><br> DVAPPS AB, a Foreign Corporation, <br><br> Defendant. | Case No.: 22-cv-02088 <br><br> Judge: Matthew F. Kennelly |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Contents

I. Introduction .................................................................................................................... 1
II. Problems With Defendant's Statement of Facts ........................................................ 2
III. Facts Beyond the Complaint, Exhibits and Improper Request for Judicial Notice ................. 3
   A. Documents Referenced in the Complaint ............................................................... 3
   B. The Demonstration Audiovisual Works – Outside the Complaint ........................... 4
   C. Judicial Notice of an Unsubstantiated List is Improper ........................................... 5
IV. The Well Pleaded Allegations of the Complaint Put Defendant on Notice ............... 5
   A. Introduction: Differences Are Not Defenses ........................................................... 5
   B. Access and Similarity ................................................................................................ 6
      1. Access ................................................................................................................... 7
      2. Looking at Defendant's Detailed Arguments Shows That Defendant Knows What is At Issue ................ 8
   C. Substantial Similarity ................................................................................................ 8
      1. Nature of the Copyrighted and Infringing Audiovisual Works ............................. 8
      2. Nature of Audiovisual Works – a Plurality of Images that Appear to Move ........ 9
      3. Originality of Audiovisual Works ......................................................................... 10
      4. Similarity in Protected Expression ....................................................................... 11
V. Other Defendant Fallacies ............................................................................................ 12
VI. Conclusion ..................................................................................................................... 14

Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) ......................................... 1
*Atari, Inc. v. North American Philips Consumer Electronics Corp.* 672 F.2d 607, 214 U.S.P.Q. (BNA) 33. Copy.L.Rep. (CCH) P 25,369 (7th Cir. 1982) ......................................................................... 2, 13
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) .................. 1
*Bryant v. Gordon* 483 F.Supp.2d 605 (ND Ill, 2007) ................................................................................ 10
*Burrow-Giles Lithographic co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884) ........................ 10
*Gilbert v. New Line Productions, Inc.*, 490 Fed.Appx. 34 (9th Cir. 2012) ............................................. 7, 12
*Gross v. Seligman*, 212 F. 930 (2d Cir. 1914) ........................................................................................... 10
*Hajim v. Endemol Shine Uk*, 545 F.Supp.3d 643, 2021 Copr.L.Dec. P 31,859 (ND Ill 2021) .................... 11
*Hobbs v. John*, 722 F.3d 1089, Copy. L. Rep. (CCH) P 30,459, 107 U.S.P.Q.2d (BNA) 1447 (7th Cir. 2013) ............................................................................................................................................. 7
*Incredible Technologies, Inc. v. Virtual Technologies, Inc.* 284 F.Supp.2d 10692003 Copr.L.Dec. P 28,686, 68 U.S.P.Q.2d 1877 (ND Ill, 2003) ........................................................................................ 9
*Meynart-Hanzel v. Turner Broadcasting System*, 2018 WL 4467147, Copy.L.Rep.(CCH) P 31,334 (ND Ill 2018) .......................................................................................................................................... 12
*Nichols v. Universal Pictures Corporation*, 45 F.2d 119 (2d Cir. 1930) ..................................................... 6
*Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011) ............................................................................ 6
*Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49 (2d Cir. 1936) ..................................... 5, 12
*Silas v. Home Box Office, Inc.,* 201 F.Supp.3d 1158 (CD Cal 2016) ...................................................... 3, 12
*Tanikumi v. Walt Disney Co.*, 616 Fed.Appx. 515 (3d Cir. 2015) .............................................................. 11
*Theotokatos v. Sara Lee Personal Products*, 971 F.Supp. 332, 38 Fed.R.Serv.3d 969, 44 U.S.P.Q.2d (BNA) 1011 (ND Ill 1997) ............................................................................................................... 11
*Tillman v. New Line Cinema Corp.*, 2008 Copr.L.Dec. ¶ 29,631 , 295 F..App'x. 840 (7th Cir. 2008) ......... 6
*Tillman v. New Line Cinema Corp.*, 2008 WL 687222, 2008 Copr.L.Dec. ¶ 29,523, 87 U.S.P.Q.2d 1293 (ND Ill 2008) .................................................................................................................................... 6
*Tillman v. New Line Cinema Corp.*, 2008 WL 687222, 2008Copy. L. Rep. (CCH). P 29,523, 87 U.S.P.Q.2d 1293 (ND Ill 2008 ......................................................................................................... 7
*Tillman v. New Line Cinema Corp.*, 295 Fed.Appx. 840, Copy. L. Rep. (CCH) P 29,631 (7th Cir. 2008) . 10
*United States v. Vayner*, 769 F.3d 125, 127 (2d Cir. 2014) ....................................................................... 3
*Wallace Computer Services, Inc. v. Adams Business Forms, Inc.* 837 F.Supp. 1413, 1994 Copr.L.Dec. P 27,184, 28 U.S.P.Q.2d 1857 (ND Ill, 1993) ..................................................................................... 10
*Weller v. Flynn*, 312 F.Supp.3d 706 (ND Ill 2018) ..................................................................................... 7
*Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124 (CD Cal 2007) .............................................................. 7, 12

Regulations

Compendium of Copyright Office Practices, Third Edition (1/28/2021) ..................................................... 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBITIOUS PRODUCTIONS, INC., an Illinois Corporation, <br><br> Plaintiff, <br><br> v. <br><br> DVAPPS AB, a Foreign Corporation, <br><br> Defendant. | Case No.: 22-cv-02088 <br><br> Judge: Matthew F. Kennelly |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

**I.     Introduction**

Defendant's Motion to Dismiss relies on law that does not control the facts alleged in the Complaint and shown in the Exhibits to the Complaint. It attempts to bring in evidence not alleged and far exceedi+ng anything appropriate for Judicial Notice. Should the Court be inclined to treat the Motion for what it really is – a motion for Summary Judgment – Plaintiff urges the full protection of both the Local Rules and the Federal Rules. The facts should be presented in a Statement of Facts and since the allegations in the Motion go far beyond the allegations of the Complaint, Rule 56 (d) discovery may be needed.

Reading the Complaint and looking at the Exhibits to the Complaint it is plain that there is "sufficient factual matter … to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009). There needs to be enough information for Defendant to have "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). Indeed, Defendant goes into great detail, far beyond the allegations of the

1

Complaint, and improper on a Motion to Dismiss, but the ability to provide that level of detail itself demonstrates Defendant knows very well what is at issue.

## II. Problems With Defendant's Statement of Facts

There are anomalies present in the facts argued in the Motion. First, the lawsuit is about copyrighted audiovisual works including the Granny movie (Defendant's Exhibit (DX) 1) and the truncated "trailer" of the movie (DX 2) alleged to be infringed by one or more of three audiovisual works comprising the "Granny" game; "Granny Chapter 2" and/or "Granny 3". However the Complaint refers to actual games – capable of being played – the appearance and timing of which responds to player input. See e.g. *Atari, Inc. v. North American Philips Consumer Electronics Corp.* 672 F.2d 607, 214 U.S.P.Q. (BNA) 33. Copy.L.Rep. (CCH) P 25,369 (7th Cir. 1982) ("the player can choose" … "the player guides" … "the player can cause") Unlike the Complaint or Plaintiff's Exhibits (PX), DX 3 is comprised of different, non-game, audiovisual works, which appears to be demonstrations of how the game might work, perhaps with a passive, non-"player" observer. The Declaration term "playthrough" is nowhere defined.

Second, Defendant introduces facts purporting to contest the element, in a first level inference of copying (access and similarity) discussing the whereabouts of a (currently) non-party individual and qualifications (not quantifications) of the market penetration of Plaintiff's movie distribution. ("… Defendant, a solo videogame developer based in Sweden …" Defendant's Memorandum … in Support, 1, Document #: 12 Filed: 06/21/22 Page 5)

Third, Defendant urges a leap into "judicial notice" by the Court so as to define a "trope" reflecting a category of audiovisual works when the Complaint only alleges, and Exhibits only show, selected similarities illustrating commonality between the movie and game. Defining a film genre is radically beyond anything ever contemplated by Judicial Notice, the Request for

Judicial Notice (two trailers for two films, the trailer of Grandmother's House, 1988) contain no scenes anything like Plaintiff's original embodiment and the reviews of The Granny, 1995 provide no images anything like Plaintiff's original embodiment.

### III.   Facts Beyond the Complaint, Exhibits and Improper Request for Judicial Notice

#### A.   Documents Referenced in the Complaint

The movie, DX1 and trailer DX2 are referenced in the Complaint. Recordings of the game DX3 are not. Nowhere in the Complaint are the non-exhibits in the Request for Judicial Notice -- one website which, if followed, may connect to an audiovisual work and other links having bibliographic information mentioned. If not referred to in the Complaint, DX3 and the listing of the links, as well as the contents which might be behind the links, should not be considered. *Silas v. Home Box Office, Inc.,* 201 F.Supp.3d 1158 (CD Cal 2016) ("[C]ourts have refused to take judicial notice of elements that are not 'generally known.'"). The Internet is renowned for including all sorts of edited and incomplete documents, and therefore simply finding a website is inappropriate for Judicial Notice. (*Id.* "Because the works indicated by Defendants in their RJN are not generally known, the Court would DENY Defendants' Request for Judicial Notice of the prior entertainment works.") See also *United States v. Vayner*, 769 F.3d 125, 127 (2d Cir. 2014), ("no evidence that the defendant himself had created the page or was responsible for its contents.") *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124 (CD Cal 2007) might support irrelevant categorization as (1) a horror movie with (2) some predatory character (3) engaging in violence toward others (*Id.* "… judicial notice that the following elements of a television show are common and prevalent in public works: (a) a host; (b) guest celebrities, (c) an interview; and (d) a cooking segment.") but these broad categories in no way subsume the scenes and images at issue based on the Complaint. Plaintiff's Exhibit (PX) 4 (Document #: 1-

3) shows 18 individual images, each part of a "moving" scene that show graphic similarities, not just a category of protagonist. And the Complaint explains "the representative still images are only part of the overall infringing works, and there are other similarities including scenes, timing, movement, and the like" (Complaint, ¶ 11) and "the similarities are not limited to those shown in the representative still shots" (*Id*. ¶ 13). The case is about audiovisual embodiments – "moving pictures" -- not the presence of a category of character in two prior films – even if they were authenticated, which they are not.

    B.  The Demonstration Audiovisual Works – Outside the Complaint

    The four independent demonstration audiovisual works DX3 do not fairly meet the Rule 12 (b) (6) requirement that they a "central" to the current Complaint -- it alleges the three games. Here the four separate, passive, audiovisual works demonstrating the actual game might justify amendment of the Complaint at some point to add four <u>new</u> acts of infringement, but the current Complaint does not refer to the demonstration audiovisual works. To the extent "authenticity" is at issue, because an actual game presents timing and images that presumably vary based on player input, at present there is an issue about whether the demonstration audiovisual works fairly present relevant aspects of the game. We do not know, for example, whether the timing of the appearance of the character in the demonstration audiovisual works fairly reflects the timing in the games. Similarly, we don't know whether the point of view relative to the target when discharging the firearm fairly reflects all points of view of the game. We do not know whether the direction of movement of the "player" fairly reflects all directions of movement enabled in the game. These are examples, more similarities may be explored in discovery, but for Judicial Notice purposes, "authenticity", of the demonstration audiovisual works is not conceded.

### C. Judicial Notice of an Unsubstantiated List is Improper

The additional "film school" list of nine horror films similarly does not include audiovisual scenes having similarity to Plaintiff's work. However, without conceding the proposed trope exists, considering one assumes *arguendo* there is a category of "slasher" movies using edged weapons, one could argue, if properly presented, both Plaintiff's and Defendant's audiovisual works appear to also use blunt instruments (not functionally capable of "slashing") [Document #: 1-4 Filed: 04/22/22 Page 6 of 20]. Also unsuitable for Judicial Notice, but there are jokes about the premise that victims in "slasher" movies never try to run away -- yet both Plaintiff's movie and Defendant's game use cars to escape. These are merely examples where components of each deviate from some sort of "genre" not in the record. One needs to look at the actual embodiments, not a superficial category. Lists on the Internet that provide incomplete information of unauthenticated sources are inappropriate for Judicial Notice. The issue should be explored in discovery and, indeed, expert witnesses might illuminate the facts.

## IV. The Well Pleaded Allegations of the Complaint Put Defendant on Notice

### A. Introduction: Differences Are Not Defenses

Pervading Defendants whole argument are facts showing what are not defenses, and certainly not on a Motion to Dismiss. The mere presence of differences or adding new matter does not avoid copyright infringement. "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49 (2d Cir. 1936). Unlike what Defendant apparently urges, that "protectable elements" of a work be identified and interpreted like claims of a patent, mere presence of differences does not avoid infringement. Notably, unlike most of the cases cited by Defendant, *Sheldon Id*. was a case of a dramatic work versus a film. Defendant argues cases that fall in the "idea" realm --

*Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011) ("allegedly copied equations, figures and text"). Although not an audiovisual work versus audiovisual work case, *Nichols v. Universal Pictures Corporation*, 45 F.2d 119 (2d Cir. 1930) stated "It is of course essential to any protection of literary property … that the right cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." Defendant has listed immaterial variations.

    **B.**    **Access and Similarity**

Nearly all the cases cited by Defendant interpret copyright law applicable to the facts in those cases, which facts notably differ from those alleged in the Complaint. Copyright, of course, is about the "right" to limit "copying." Legally, this violation might be provable by literal copying – and the present case has not yet had discovery of Defendant's process of "creation" – but there are also two levels of inference of copying: (1) access and similarity and, where access is unclear (2) striking similarity. *Tillman v. New Line Cinema Corp.*, 2008 WL 687222, 2008 Copr.L.Dec. ¶ 29,523, 87 U.S.P.Q.2d 1293 (ND Ill 2008) affirmed *Tillman v. New Line Cinema Corp.*, 2008 Copr.L.Dec. ¶ 29,631 , 295 F..App'x. 840 (7th Cir. 2008). Direct copying, on information and belief, the actual facts being uniquely within the control of Defendant, and both inferences, are alleged in and supported by the allegations of the present Complaint (¶ 10, 22, "**copied** or derived from AMBITIOUS's copyrighted work"; ¶ 13 "a comparison of the entire works including their animated aspects" .... The visual content of the games is <u>strikingly similar</u> to the audiovisual content" (emphasis added)) Defendant's argument of "no access" relies on facts far beyond the Complaint and, indeed, the presumptions that flow from the two registrations reflecting "publication" may be enough to meet the "access" prong at the pleadings stage.

### 1. Access

Both the trailer and movie are legally presumed to be published from the registrations. (PX 1; PX5, Document #: 1-1; 1-5, Section 3 b.) The Complaint alleges – and it is improper for Defendant to introduce facts to the contrary – that there was distribution and, indeed, somewhat of a "cult" success, Complaint, ¶ 9. All a Plaintiff must do in a Complaint is "connect the dots" *Weller v. Flynn*, 312 F.Supp.3d 706 (ND Ill 2018). These are expressly connected, Par. 9. Indeed, in many of the cases cited by Defendant "access" would have been limited, under their facts, not general "publication". *Weller, supra, Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124 (CD Cal 2007) (Plaintiff "pitched" a program idea) *Gilbert v. New Line Productions, Inc.*, 490 Fed.Appx. 34 (9th Cir. 2012) (multiple drafts of a screenplay) *Tillman, supra* (on summary judgment, "unsupported conspiracy theories" at 6)

Defendant criticizes the sufficiency of the fact allegations in Paragraph 9:

> "9. The feature film Granny achieved popular success upon its introduction, was widely distributed by authorized distributors and achieved "fan" or "cult" success that enhanced knowledge of the film and promoted access thereto."

These allegations appear much different than the facts that formed the bases for the decisions above. Commercial distribution and any success are enough to differentiate the facts of *Tillman*. Not unrelated is the fact that *Tillman* and many of the other cited cases involved screenplays, program ideas or "treatments" – which are not typically available to the public, while the facts here support the conclusion a member of the public, not some exclusive group, would have had access. For Motion to Dismiss purposes, the allegations here are much different than a conspiracy theory. (See also *Hobbs v. John*, 722 F.3d 1089, Copy. L. Rep. (CCH) P 30,459, 107 U.S.P.Q.2d (BNA) 1447 (7th Cir. 2013) -- unpublished song)

7

### 2. Looking at Defendant's Detailed Arguments Shows That Defendant Knows What is At Issue

Defendant's argument that the Complaint insufficiently recites facts is belied by their need to go beyond the pleadings to find differences. If popular success, wide distribution through authorized distributors and "fan" or "cult" success were insufficient to put Defendant on notice – under notice pleading – there would be no need for Defendant to comment about "facts plausibly demonstrating that Defendant, a solo videogame developer based in Sweden, had access to the Film, which was apparently released two decades ago to limited commercial success." (Defendant's Memorandum, at 1) There are no facts limiting access the way Defendant implies. Judicial Notice also fails to cast doubt about the allegations of access.

### C. Substantial Similarity

### 1. Nature of the Copyrighted and Infringing Audiovisual Works

Defendant exercises great effort to point out minor differences in individual images. However, the Complaint (¶¶ 8, 11 and 13) makes it clear that it is the movie versus the game – both audiovisual works – that are at issue. The individual images merely provide context and limited visual stimulus; they do not show the entire sequence of scenes from which audiovisual work similarity must be judged. And the recorded game demonstrations may not have all the timing, directions, movement and other appearance of the real game – which may well be determined in discovery. Audiovisual works are defined in the Glossary of the Compendium of Copyright Office Practices, Third Edition (1/28/2021):

> Audiovisual work: "'Audiovisual works' are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101. In other words, the term "audiovisual works" refers broadly to any work that includes any series of related visual images, whether or

> not moving, and with or without sounds, as long as a machine or device is essential to the viewing of the related series of images.

See also *Incredible Technologies, Inc. v. Virtual Technologies, Inc.* 284 F.Supp.2d 10692003 Copr.L.Dec. P 28,686, 68 U.S.P.Q.2d 1877 (ND Ill, 2003) ("[V]ideo games are copyrightable as "audiovisual works," as that term is defined in the Copyright Act. See 17 U.S.C. § 101") The individual shots put defendant on Notice, pursuant to notice pleading, and the express allegations are they are not the only similarities.

### 2. Nature of Audiovisual Works – a Plurality of Images that Appear to Move

While not conceding the demonstration audiovisual works, the inclusion of a full copy of the movie Granny, assuming authenticity in reliance on the Declaration, is not objected to. This, in conjunction with the actual allegations of the Complaint and still images determined to be sufficient to show graphic similarities, is adequate to place at issue copyright infringement. Important is that, unlike the facts in most of the cases cited by Defendant, both Plaintiff's works and Defendant's works are audiovisual works. They combine a plurality of individual images (as shown in the Exhibits) with many additional images, before and after, to provide the appearance of movement – all part of telling the story and communicating to the viewer to achieve the mental and emotional reactions. Thus, in addition to the original, copyrightable, aspects of each individual images, the timing and movement provided by dozens more images, before and after, combine to provide originality that far exceeds the presence of a character comprising "Granny." In addition to the purely artistic presentation, audiovisual works are successful because they not only tell a "story", their light, dark, color, characters, scenes, props, move and the manner, direction, timing of that movement provide lasting impressions to the viewer. For example, a slow moving character, in a slow moving scene, who pops up "out of nowhere" might provude a dramatic effect that results from the whole audiovisual work, not one, or even twenty, individual images.

For purposes of a Motion to Dismiss, the only question is whether the Complaint and Exhibits fairly notify Defendant that the foregoing is at issue. Paragraphs 8, 9 – 14 place this at issue and sufficiently describe the dramatic similarities conveyed by the "moving" images.

### 3. Originality of Audiovisual Works

We have guidance, more than a century old, about there being sufficient originality in a single photograph, much less a series of interrelated individual graphic works combined to simulate motion, necessarily, over time. All the following can be elements of originality in even a single image: (1) selecting and arranging a costume; (2) background ("Draperies") (3) composition ("present graceful outlines"); (5) light and shade; (6) model's "expression" (see *Burrow-Giles Lithographic co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884)); (6) Pose (7) Light; (8) Shade (see *Gross v. Seligman*, 212 F. 930 (2d Cir. 1914)) These are in addition to other photographic decisions that create particular expression: "camera angle, lighting, etc." *(Wallace Computer Services, Inc. v. Adams Business Forms, Inc*. 837 F.Supp. 1413, 1994 Copr.L.Dec. P 27,184, 28 U.S.P.Q.2d 1857 (ND Ill, 1993)); "selection of cameras, lenses, filters, and a light meter … selected the subjects and the positioning between himself and the subjects, framed the images in his viewfinder, and controlled the shutter speed and aperture settings." (*Bryant v. Gordon* 483 F.Supp.2d 605 (ND Ill, 2007)) These cases involved single images, not audiovisual works. There is also the selective addition and timing of sounds – including background dramatic sounds, not merely dialogue. Here there is a significant amount of originality and copyrightable content and many similarities alleged in the audiovisual works at issue.

Movies, even if only a script (much less than what is alleged here) can include additional factors such as (but not limited to): (1) central characters, (2) theme and (3) plot. *Tillman v. New Line Cinema Corp*., 295 Fed.Appx. 840, Copy. L. Rep. (CCH) P 29,631 (7th Cir. 2008) (finding

them dissimilar under the facts there). A case cited therein adds: (4) mood, (5) pace, (6) dialogue and (7) sequence of events. Inherent in the images alleged images are many factors other than a hypothetical "evil Granny." Putting the images in an audiovisual work adds even more factors. And these are inherent in audiovisual works ("film" ¶ 8; "game" ¶ 9 – 14) and alleged ("the representative still images are only part of the overall infringing works, and there are other similarities including scenes, timing, movement, and the like" ¶ 11; "comparison of the entire works including their animated aspects" ¶ 13; "Each separate version is an unauthorized derivative work, individual images and scenes are infringing reproductions, and each download enabled is an infringing distribution." ¶ 14.)

### 4. Similarity in Protected Expression

Defendant relies on cases where their facts are different than those presented here – audiovisual work versus audiovisual work. For example in *Theotokatos v. Sara Lee Personal Products*, 971 F.Supp. 332, 38 Fed.R.Serv.3d 969, 44 U.S.P.Q.2d (BNA) 1011 (ND Ill 1997) the single graphic work's only similarity alleged in the Complaint (and shown in exhibits) was in arranging flags from past Olympic competitions in a circle. *Tanikumi v. Walt Disney Co.*, 616 Fed.Appx. 515 (3d Cir. 2015) involved print works comprising autobiographical (presumably non-fiction) books and an animated film "Frozen." Unlike *Hajim v. Endemol Shine Uk*, 545 F.Supp.3d 643, 2021 Copr.L.Dec. P 31,859 (ND Ill 2021) the Complaint here alleges and Exhibits show similarities in the embodiments of two audiovisual works, not just ideas or plots.

Putting aside the question of access – not really at issue here – in screenplay cases, it is also a fact that the point of written screenplays is to convey ideas for creation of a derivative work in a much different medium. Thus it is easy to see that screenplay cases often involve ideas or *scenes a' faire* conveyed in the screenplay – often the whole point. *Gilbert v. New Line,*

11

*supra* (Drafts of screenplay not infringed by film) *Zella, supra* (Plaintiff pitched program idea) *Silas, supra* (Screenplay v. episode in television series) *Meynart-Hanzel v. Turner Broadcasting System*, 2018 WL 4467147, Copy.L.Rep. (CCH) P 31,334 (ND Ill 2018) (television show "treatment") Screenplays are not what is at issue here.

**V.      Other Defendant Fallacies**

Defendant urges distraction using unrelated scenes in the film. It is not relevant what the actors do during the party before relevant scenes are presented – Defendant's Memorandum, pages 9, 10 – but "no plagiarist can excuse the wrong by showing how much of his work he did not pirate" *Sheldon v. Metro-Goldwyn, supra*. Defendant spends pages discussing irrelevant portions of the copyrighted movie. The "set up" for the Granny character entering the scene does not provide a defense for all scenes similar in appearance, content and movement.

Defendant makes lists of differences. This is not a patent case with claim "elements." Indeed, changing the labels could arguably change some differences into similarities. Page 12 of Defendant's Memorandum shows an image with labels for differences – of course only showing stills with no movement or progress between serial images. Some of Defendant's labels do not even make sense, but the features are similar <u>or</u> different, depending on the labels:

| **Defense "Differences"** | **Plaintiff "Similarities" Same Features** |
|---|---|
| Gray Eyebrows | Eyebrows Darker than Skin |
| Peach skin/Gray Skin | Dark skin |
| Long hair / short hair | Loose Gray Hair |
| Long sleeved dress/ no sleeves | Rumpled gown |
| Rosy? Cheeks | Wrinkled cheeks |
| No? Eyebrows | Eyebrows Darker than Skin |
| White glowing eyes | Contrasting Color Eyes |
| Closed smile? | Threatening mouth |
| Mouth permanently agape | Threatening mouth |
| Mask? Differs from Neck | Neck dark near gown |
| Blood on chin | Wrinkled chin |

12

There is certainly doubt that labeling the skin is "peach", the cheeks "rosy", a "smile" is accurate, a "mask" is visible, whether hair differs in length or is behind the shoulder. Defendant's "no eyebrows" label appears incorrect because there is an arc like an eyebrow to the right of Defendant's arrow. These points are made, not because Plaintiff has a burden of identifying "elements" but because for Motion to Dismiss purposes, Defendant knows exactly what is at issue, there is adequate notice, and more than enough similarity to be judged whether it is substantial when all the facts between the audiovisual works are presented to a trier of fact. The quote from *Atari, supra* would appear to apply, unedited, to the facts here, except for the absence of moving dots:

> Defendants point to a laundry list of specific differences - particularly the concept of moving dots, the variations in mazes, and certain changes in facial features and colors of the characters - which they contend, and the district court apparently agreed, shows lack of substantial similarity. Although numerous differences may influence the impressions of the ordinary observer, "slight differences between a protected work and an accused work will not preclude a finding of infringement" where the works are substantially similar in other respects. Durham, 630 F.2d at 913; see Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Exact reproduction or near identity is not necessary to establish infringement. "(A)n infringement ... includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy." Universal Pictures Co., Inc. v. Harold Lloyd Corp., 162 F.2d 354, 360 (9th Cir. 1947). In comparing the two works, the district court focused on certain differences in detail and seemingly ignored (or at least failed to articulate) the more obvious similarities. The sine qua non of the ordinary observer test, however, is the overall similarities rather than the minute differences between the two works. Peter Pan Fabrics, 274 F.2d at 489; cf. Warner Brothers, 654 F.2d at 209-11 ("Judge Motley's opinion indicates that she properly focused upon 'the similarities not the differences' "). The nature of the alterations on which North American relies only tends to emphasize the extent to which it deliberately copied from the plaintiffs' work. Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969). When analyzing two works to determine whether they are substantially similar, courts should be careful not to lose sight of the forest for the trees.12 Hoehling, 618 F.2d at 979-80.

Similarly, Defendant offers pictures of the houses. This case is about audiovisual works, not architectural works. While there are differences in the houses, coloration, angles, the

13

presence of dormers and peaked roofs are all similar. These are not high rises and two flats. The appearance of these houses can be seen as similar and adding a porch or a tower does not render them sufficiently dissimilar.

## VI. Conclusion

DX3 is a collection of recordings purporting to be from the game are not the game itself. The Request for Judicial Notice is flawed as not meeting the requirements for Judicial Notice on either general acceptability or authenticity. The "facts" contesting access are not appropriately in the record, either. Defendant breaks fundamental principles in copyright infringement by distraction about how much they did not take and the presence of trivial differences that do not depart from substantial similarity. The Complaint adequately pleads the issue of copyright infringement.

Respectfully submitted,

/David C Brezina/

David C. Brezina

Date: __July 22, 2022__

David C. Brezina
Burton S. Ehrlich
Ladas & Parry LLP
224 South Michigan Avenue
Suite 1600
Chicago, Illinois 60604
312 427-1300
312 408-2532 (direct)

**CERTIFICATE OF SERVICE**

      I hereby certify that I shall, this 22d day of July, 2022, electronically file the foregoing Motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record, believed to comprise the following:

Hassan Elrakabawy
Steven Douglas Smelser
Yukevich Cavanaugh
355 S. Grand Ave.
15th Floor
Los Angeles, CA 90071

Mark Andrew Borsos
Joseph T. Nabor
Fitch, Even, Tabin & Flannery
120 South LaSalle St.
Suite 1600
Chicago, IL 60603-3406


Date: <u>July 22, 2022</u>　　　　　　　　　　<u>/David C. Brezina/</u>

                                                                                       David C. Brezina