UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMBITIOUS PRODUCTIONS, INC.,

        Plaintiffs,

        v.

DVAPPS, AB,

        Defendant.

Case No. 1:22-cv-02088

Honorable Matthew F. Kennelly

## DEFENDANT DVAPPS, AB'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF FACTS ...................................................................................2

    A. Plaintiff's Film ...................................................................................2

    B. Dvapps' Game (*Granny*, *Granny Part 2*, and *Granny 3*) ........................................2

II. SUMMARY JUDGMENT STANDARD.............................................................4

III. LEGAL STANDARD FOR PROVING COPYRIGHT INFRINGEMENT .....................4

IV. NO REASONABLE FACT FINDER COULD FIND COPYRIGHTABLE OR SUBSTANTIAL SIMILARITIES BETWEEN THE FILM AND THE GAME ...............6

    A. There is no Protectable Expression that Is Substantially Similar between Plaintiff's Film and DVapps' Game ....................................................................6

        1. The Title and Character Name "Granny" are Not Protected by Copyright ...........................................................................................6

        2. Plaintiff Cannot Copyright the Idea of a Scary Grandmother ...................6

        3. Plaintiff Cannot Copyright "Horror" Scenes à Faire ...........................7

    B. Countless Differences Overwhelm Any Alleged Similarities ................................7

        1. The Plot and Sequence of Events Are Not Similar....................................9

        2. The Characters Are Not Similar .............................................................9

        3. The Themes Are Not Similar................................................................11

        4. Pacing, Structure, Dialogue, and Setting Are Not Similar ........................11

V. THERE IS NO ISSUE OF MATERIAL FACT AS TO DVAPPS' LACK OF ACCESS TO THE FILM.............................................................................12

    A. Standard for Establishing Access...........................................................13

    B. Defendant Was Unaware of Plaintiff's Film ...........................................14

    C. The Game is not Similar Enough to the Film to Infer Access .............................14

VI. CONCLUSION ..............................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto–Culver Co. v. Andrea Dumon, Inc.*,
    466 F.2d 705 (7th Cir.1972) ................................................................. 6

*Aluminum Distribs., Inc. v. Gulf Aluminum Rolling Mill Co.*,
    No. 87 C 6477, 1989 WL 157515 (N.D. Ill. Dec. 11, 1989) ................................... 13

*Alvarez v. Industria del Amor*,
    Case No. 98 C 1851, 1999 WL 498610 (N.D. Ill. July 8, 1999) ............................. 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................. 13

*Art Attacks Ink, LLC v. MGA Entertainment, Inc.*,
    581 F.3d 1138 (9th Cir. 2009) .................................................................. 14

*Atari, Inc. v. North American Philips Consumer Electronics Corp.*,
    672 F.2d 607 (7th Cir. 1982) ..................................................................... 8

*Cain v. Hallmark Cards, Inc.*,
    Civ. No. 3:15-00351-JWD-EWD, 2016 WL 3189231 (M.D. La. June 6, 2016) ...................... 14

*Capcom Co. v. MKR Group, Inc.*,
    2008 U.S. Dist. LEXIS 83836 (N.D. Cal., Oct. 10, 2008) ................................... 8, 9

*Compulife Software Inc. v. Newman*,
    2020 WL 2549505 (11th Cir. 2020) ................................................................ 5

*Corbello v. Valli*,
    974 F.3d 965 (9th Cir. 2020) ..................................................................... 5

*Daniels v. Walt Disney Co.*,
    No. 18-55635, 2020 WL 1240915 (9th Cir. Mar. 16, 2020) ....................................... 7

*Design Basics, LLC v. Lexington Homes, Inc.*,
    858 F.3d 1093 (7th Cir. 2017) .......................................................... passim

*Fashion Victim, Ltd. v. Sunrise Turquoise, Inc.*,
    785 F. Supp. 1302 (N.D. Ill. 1992) ............................................................ 13

*Francescatti v. Germanotta*,
    2014 WL 2767231 (N.D. Ill. June 17, 2014) ..................................................... 6

*Gentieu v. Tony Stone Images/Chicago, Inc.*,
    255 F. Supp. 2d 838 (N.D. Ill. 2003) ......................................................... 14

*Goodman v. Nat. Sec. Agency, Inc.*,
    621 F.3d 651 (7th Cir. 2010) ..................................................................... 4

*Hajim v. Endemol Shine UK*,
    545 F. Supp. 3d 643 (N.D. Ill. 2021) ........................................................... 6

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999) ................................................................... 5

*Hobbs v. John*,
    722 F.3d 1089 (7th Cir. 2013) .............................................................. 4, 5, 7

*Hobbs v. John*,
    No. 12 C 3117, 2012 WL 5342321 (N.D. Ill. Oct. 29, 2012),
    aff'd, 722 F.3d at 1096 (7th Cir. 2013) ......................................................... 6

*LaFrenier v. Kinirey*,
   550 F.3d 166 (1st Cir. 2008) ............................................................... 13

*LZT/Filliung P'ship, LLP v. Cody/Braun & Assocs., Inc.*,
   117 F. Supp. 2d 745 (N.D. Ill. 2000) ................................................... 14

*Meynart-Hanzel v. Turner Broad. Sys.*,
   No. 17 C 6308, 2018 WL 4467147 (N.D. Ill. Sept. 18, 2018) ............ 6, 14

*Nash v. CBS, Inc.*,
   704 F. Supp. 823 (N.D. Ill. 1989) ....................................................... 13

*Newt v. Twentieth Century Fox Film Corp.*,
   2016 U.S. Dist. LEXIS 98308 (C.D. Cal. July 27, 2016) ...................... 9

*Perez v. Thorntons, Inc.*,
   No. 11 CV 1787, 2012 WL 5246862 (N.D. Ill. Oct. 23, 2012) ............ 4

*Peters v. West*,
   692 F.3d 629 (7th Cir. 2012) ........................................................... 4, 6

*Purohit v. Legend Pictures, LLC*,
   448 F. Supp. 3d 382 (D. Del. 2020) ..................................................... 9

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ........................................................... 14

*Selle v. Gibb*,
   741 F.2d 896 (7th Cir. 1984) ............................................................. 13

*Silas v. Home Box Office, Inc.*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016),
   aff'd, 713 F. App'x 626 (9th Cir. 2018) .............................................. 11

*Tillman v. New Line Cinema Corp.*,
   2008 WL 687222 (N.D. Ill. Mar. 7, 2008),
   aff'd, 295 F. App'x 840 (7th Cir. 2008) ............................................... 7

*Tillman v. New Line Cinema Corp.*,
   295 F. App'x 840 (7th Cir. 2008) ........................................................ 5

*Wavelength Film Co. v. Columbia Pictures Indus., Inc.*,
   631 F. Supp. 305 (N.D. Ill. 1986) ....................................................... 7

*Zimnicki v. Gen. Foam Plastics Corp.*,
   U.S. Dist. LEXIS 134607 (N.D. Ill. Nov. 22, 2011) ............................. 5

**Statutes**
17 U.S.C. § 102(b) ................................................................................. 6

**Regulations**
37 C.F.R. § 202.1(a) .............................................................................. 6

## PRELIMINARY STATEMENT

Summary judgment dismissing a copyright infringement case must be granted where the plaintiff cannot prove by admissible evidence both that (a) the defendant had access to and actually copied the protectable expression embodied in the plaintiff's work and (b) the defendant's work is substantially similar to the plaintiff's work. Plaintiff cannot prove either of these elements, and therefore summary judgment must be granted to Defendant.

Plaintiff accuses Defendant's massively popular video game series (*Granny* together with *Granny Part 2*, and *Granny 3*, collectively referred to as the "Game") of infringing Plaintiff's obscure 1999 straight-to-video movie of the same name (together with its trailer referred to as the "Film"). As the Court will discern by reviewing the works, Plaintiff's Film and Dvapps' Game are not substantially similar. The Film is a live-action movie about a cross-dressing man who stalks and appears to murder a group of friends, although this is later revealed to be a hoax. The Game is an animated computer program centered on using a variety of items to solve puzzles and escape the house of a demonic grandmother. All alleged similarities between the works are, at most, the result of shared ideas, with the resulting expression of those ideas being very different. Indeed, it is difficult to imagine that Plaintiff would have brought suit if the accused Game were not titled "Granny," yet neither the title nor the name of the eponymous central character are eligible for copyright protection.

There is also no liability for copyright infringement where nothing has been copied. Two creators may independently create works having similarities with neither being liable to the other for infringement. Here, all evidence indicates that Defendant was completely unaware of Plaintiff's obscure film. In fact, the idea of Defendant's Granny character evolved from Defendant's prior video game characters, not from copying of Plaintiff's obscure film. Plaintiff's theory of access rests entirely upon unsupported speculation, which is not evidence and does not

1

raise an issue of material fact as to Defendants' access to the Film.

For these and the other reasons discussed below, Dvapps respectfully requests that this Court grant its motion for summary judgment dismissing the complaint, and award Dvapps its costs and attorneys' fees as provided for by 17 U.S.C. § 505.

## I. <u>STATEMENT OF FACTS</u>

The relevant undisputed facts are set forth in detail in the accompanying Defendants' Statement of Uncontested Facts pursuant to Local Rule 56.1 (hereafter referred to as "SUF ¶"), and are further summarized below.

### A. Plaintiff's Film

Plaintiff's Film tells the story of eight friends gathered in a house who are attacked by a character referred to as "Granny," a man wearing a rubber mask resembling a smiling elderly woman. SUF ¶¶ 5–21. Granny appears to murder all but one of the friends, newcomer Michelle. *Id.* Michelle ultimately shoots Granny, escapes, and appears to collapse and die due to a heart condition and the stress caused by Granny's murder of her friends. SUF ¶ 22. At the end of the Film, it is revealed that the murders were staged as part of an initiation rite welcoming Michelle into the group, and that the friends regret Michelle's apparent death. SUF ¶¶ 23–24. Before the credits roll, Michelle drives by the group of friends gathered at her funeral, indicating that she had faked her own death much like her friends had faked theirs. SUF ¶ 25.

### B. Dvapps' Game (*Granny*, *Granny Part 2*, and *Granny 3*)

Dennis Vukanovic, Dvapps' sole owner and developer, has developed more than seventeen videogames since 2011, including several horror-themed games. SUF ¶ 31; Decl. Dennis Vukanovic ("Vukanovic Decl.") ¶¶ 4–5. No one other than Mr. Vukanovic has been involved in the creation of the Game or any other of Dvapps' videogames. SUF ¶ 32. Mr. Vukanovic was born and raised in Sweden, having visited the U.S. once in 2019. SUF ¶ 33. He had never seen or heard

of the Film prior to this lawsuit. SUF ¶ 34. Nor is he aware of any connection between himself and anyone involved with the Film. *Id.*

In November 2013, prior to creating the Game, Mr. Vukanovic created a popular video game series called *Slendrina*. SUF ¶ 38. Like the Game, *Slendrina* challenges the player to navigate a given environment and solve puzzles to escape while avoiding the main antagonist. SUF ¶ 39. Between November 2013 and August 2017, Vukanovic created several *Slendrina* sequels, which gave hints as to the central character's origin and introduced various family members, including Slendrina's mother, grandfather, and grandmother ("Granny"). SUF ¶ 40; Vukanovic Decl. ¶ 11. A screenshot showing the various *Slendrina* games is shown below:



In November 2017, Mr. Vukanovic created *Granny* the Game as a spinoff of *Slendrina*, featuring Slendrina's supernatural grandmother as the primary antagonist. SUF ¶ 40. Between 2017 and June 2021, Mr. Vukanovic created and released two additional Granny games. SUF ¶¶ 41–42. Mr. Vukanonic did not base the Game or any character on any existing work or character, instead conceiving of a scary, demonic grandmother to Slendrina. Vukanovic Decl. ¶ 12.

In the Game, the player awakes in Granny's old, decrepit house and must explore to find items that help the player open locks and escape the house. SUF ¶ 43. If Granny catches the Player,

time skips ahead to the next day, and if the player cannot escape within five days the player is killed. SUF ¶ 43. In *Granny Chapter Two*, the player must avoid both Granny and a Grandpa character. SUF ¶ 41. In *Granny 3*, the player must avoid Granny, Grandpa, and their granddaughter Slendrina. SUF ¶ 42.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). While on summary judgment all justifiable inferences are to be drawn in the non-movant's favor, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017). Thus, the nonmoving party must "marshal and present the court with the evidence [it] contends will prove [its] case," and that evidence must be admissible. *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Unless the nonmoving party can point to specific facts in the record that show that a reasonable jury could find for the nonmoving party, summary judgment should be granted. *See Perez v. Thorntons, Inc.*, No. 11 CV 1787, 2012 WL 5246862, at *3 (N.D. Ill. Oct. 23, 2012). As will be shown below, Plaintiff is unable to proffer any specific facts entitling its claim to proceed beyond this motion.

## III.   LEGAL STANDARD FOR PROVING COPYRIGHT INFRINGEMENT

Copyright infringement requires the owner of a valid copyright to demonstrate "unauthorized copying of constituent elements of the work that are original." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (quoting *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012)). Although actual copying is often impossible to prove, courts recognize that copying may be established indirectly by proving two elements. First, a plaintiff must establish that the defendant had "access" to the original copyrighted work. *Design Basics*, 858 F.3d at 1099. Second, a plaintiff

must establish that the copyrightable expression in the two works is "substantially similar." *Hobbs*, 722 F.3d at 1094. Here, the Complaint fails as a matter of law on both elements.

In assessing substantial similarity, courts in this Circuit apply the "ordinary observer test," which asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's [protectable] expression." *Design Basics*, 858 F.3d at 1101. Courts should focus not on isolated similarities but on "[t]he 'central characters, theme, and plot' of the works." *Tillman v. New Line Cinema Corp.*, 295 F. App'x 840, 842 (7th Cir. 2008). The ordinary observer test does not involve expert testimony, "but depends on whether the accused work has captured the total concept and feel of the copyrighted work." *Zimnicki v. Gen. Foam Plastics Corp.*, U.S. Dist. LEXIS 134607, at *9 (N.D. Ill. Nov. 22, 2011).

"[N]on-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999). Since infringement applies only to "protected expression," unprotected elements of the Plaintiff's work (scenes-a-faire, public domain information, and other unprotected material) must be "filtered out" when undertaking a substantial similarity analysis. *See Design Basics*, 858 F.3d at 1101 (plaintiff failed to raise a triable issue where its evidence of similarity improperly looked to non-protectable elements.)[1] Because the test for substantial similarity is an objective one, district courts may determine copyright infringement claims on a dispositive motion. *Hobbs v. John*, No.

---

[1] *See also Corbello v. Valli*, 974 F.3d 965, 971 (9th Cir. 2020) ("[The court] must take care to inquire only whether the protectable elements, standing alone, are substantially similar. In so doing, we filter out and disregard the non-protectable elements."); *Compulife Software Inc. v. Newman*, 2020 WL 2549505, *8-9 (11th Cir. 2020) ("[U]nprotectable . . . material should be filtered out of the analysis before comparing the two works.").

5

12 C 3117, 2012 WL 5342321, at *19 (N.D. Ill. Oct. 29, 2012), aff'd, 722 F.3d at 1096 (7th Cir. 2013) ("after filtering out the non-protected elements, no similarities exist between the two songs except for generic themes, words, and phrases").[2]

## IV. NO REASONABLE FACT FINDER COULD FIND COPYRIGHTABLE OR SUBSTANTIAL SIMILARITIES BETWEEN THE FILM AND THE GAME

### A. There is no Protectable Expression that Is Substantially Similar between Plaintiff's Film and DVapps' Game

#### 1. The Title and Character Name "Granny" are Not Protected by Copyright

It is well established that titles and short phrases, like "Granny," are not protected by copyright. *Alberto–Culver Co. v. Andrea Dumon, Inc*., 466 F.2d 705, 711 (7th Cir.1972); 37 C.F.R. § 202.1(a). Therefore, the fact that the Film and Game share a name, and that the antagonists are referred to by the same name, bears no weight in the copyright infringement analysis. When the common name "Granny" is ignored, it is clear that there are no similarities.

#### 2. Plaintiff Cannot Copyright the Idea of a Scary Grandmother

Plaintiff's copyright claim appears based on the Film and the Game both having homicidal grandmother characters. But the character of a scary grandmother is an idea, not creative expression, and does not fall within the protection of copyright. *See* 17 U.S.C. § 102(b). The idea of a villainous "granny" is a common trope existing long before Plaintiff's Film, and similarities to other pre-existing works, particularly in the crowded field of movies and games, undermines any inference of copying. *See Design Basics*, LLC, 858 F.3d at 1100. Further, the very term

---

[2] *See also, Francescatti v. Germanotta*, 2014 WL 2767231, at *3 (N.D. Ill. June 17, 2014) (granting summary judgment finding no reasonable trier of fact could find Lady Gaga song *Judas* substantially similar to Plaintiff's song *Juda*)*; Hajim v. Endemol Shine UK*, 545 F. Supp. 3d 643, 650 (N.D. Ill. 2021) (dismissing copyright claim where works not substantially similar despite starting from common science fiction theme of robotic or holographic popstars); *Meynart-Hanzel v. Turner Broad. Sys*., No. 17 C 6308, 2018 WL 4467147, at *9 (N.D. Ill. Sept. 18, 2018) (granting dismissal where generic similarities "paled in comparison to vast differences in characters, plot, mood, and themes between the two works"); *Peters*, 692 F.3d at 636 (affirming dismissal where songs "separated by much more than 'small cosmetic differences' " and "they share only small cosmetic similarities")..

"granny" denotes an elderly woman and naturally evokes elements such as white hair and dresses or nightgowns. Plaintiff's "Granny" character is lightly sketched without identifiable character traits beyond the generic traits of a masked killer, also making it unprotectable by copyright. *See Daniels v. Walt Disney Co.*, No. 18-55635, 2020 WL 1240915, at *5 (9th Cir. Mar. 16, 2020) (affirming dismissal finding characters only lightly sketched, lacking identifiable character traits, attributes.). All alleged similarities between the works are, at most, the result of shared ideas, with the resulting expression of those ideas being very different.

### 3.    Plaintiff Cannot Copyright "Horror" Scenes à Faire

In addition to disallowing copyrighting of ideas like a scary grandmother, as noted above, the Copyright Act does not protect stock elements and themes, often termed scenes à faire. These are defined as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Hobbs*, 722 F.3d at 1095; *Wavelength Film Co. v. Columbia Pictures Indus.*, *Inc.*, 631 F. Supp. 305, 306 (N.D. Ill. 1986).

Here, as discussed above, the alleged similarities between the Film and the Game–(a) a creepy villain, (b) spooky house/outdoor setting, (c) stalking/chasing innocent victims, (d) using crude weapons against victims, and (e) resulting gory killings—are unprotectable scenes à faire common to horror films or games. *See, e.g., Hobbs*, 722 F.3d at 1095–96. These are the most "rudimentary, commonplace, standard, or unavoidable" staples of the horror genre and cannot form the basis of Plaintiff's infringement claim. *See, e.g., Tillman v. New Line Cinema Corp.*, 2008 WL 687222, at *8 (N.D. Ill. Mar. 7, 2008), aff'd, 295 F. App'x 840 (7th Cir. 2008).

After filtering out the abstract ideas and scenes à faire, analyzing only the protected expression in the works demonstrates that the Game is not substantially similar to the Film.

### B.    Countless Differences Overwhelm Any Alleged Similarities

Courts apply an ordinary observer test for substantial similarity, which "depends on whether the accused work has captured the 'total concept and feel' of the copyrighted work" and "must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). But here, Plaintiff is placing undue focus on minute similarities that relate to unprotectable elements rather than analyzing overall similarity.

Even numerous similarities do not warrant denial of a dispositive motion where the total concept and feel of the copyrighted work are not similar or where any similarities are linked with a particular genre, character type, or subject matter. For instance, in one case, Capcom, the maker of the popular video game "Dead Rising," filed a motion to dismiss copyright counterclaims brought by the owner of seminal zombie film "Dawn of the Dead." *Capcom Co. v. MKR Group, Inc.*, 2008 U.S. Dist. LEXIS 83836 (N.D. Cal., Oct. 10, 2008). The copyright holder alleged numerous similarities, including a bi-level shopping mall besieged by zombies; action in a gun shop; a rural area with the National Guard patrolling its environs; the story beginning with lead characters taken to the mall by helicopter; many of the zombies wearing plaid shirts; subtext critique of sensationalistic journalism through use of lead male characters that are tough, cynical journalists with short brown hair and leather jackets; creative use of items such as propane tanks, chainsaws, and vehicles to kill zombies; parody of rampant consumerism; use of music in the mall for comedic effect; and, use of the word "hell." *Id*. at *18–19. The court analyzed the plot, characters, theme, dialogue, mood, setting, pace, and total concept and feel of the copyrighted film and accused video game, and concluded that the case ought to be dismissed:

> A comparison of the movie and the video game reveals profound differences. MKR has not identified any similarity between Dead Rising and any protected element of Dawn of the Dead. Rather, the few similarities MKR has alleged are driven by the wholly unprotectable concept of humans battling zombies in a mall during a zombie outbreak…. Nearly all the similarities between the two works identified by MKR, upon close scrutiny, constitute nothing more than a collection of unprotectable

elements thereby failing the extrinsic test and sending the copyright claim to its doom.

*Id.* at *22 (emphasis in original). Just like in *Capcom*, here the copyright holder has failed to identify similarities between protected elements of its movie and the accused video game, and a comparison of the works reveals profound differences.

In another case, the District of Delaware dismissed an action under Rule 12(b)(6) brought by the owner of a picture book called "The Krampus Night Before Christmas" against the makers of a motion picture and graphic novel called "Krampus." *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382 (D. Del. 2020). Plaintiff argued that the film copied "original and distinctive elements" of the particular Krampus design shown in the book's illustrations. *Id.* at 387 (internal quotes omitted). In granting the motion to dismiss, the court explained that "[t]he elements claimed by Plaintiff, however, are not protectable [because these] elements are 'too common and generic, and constitute scenes-a-faire that flow directly from' historical depictions of Krampus and themes of both Christmas and horror entertainment." *Id.* at 388 (*quoting Newt v. Twentieth Century Fox Film Corp.*, 2016 U.S. Dist. LEXIS 98308, at *11 (C.D. Cal. July 27, 2016)).

### 1. The Plot and Sequence of Events Are Not Similar

The Film is a "slasher" movie where the "slasher" turns out to have been a hoax, but it nevertheless hues closely to the genre with over-the-top killings and other tropes. The Film's story is about a set of friends playing a prank on one of their group. SUF ¶¶ 6–25. The Game, in contrast, lacks any of the significant events of the Film, SUF ¶¶ 43–54, and instead involves an anonymous, lone captive who is kidnapped and attempts to escape. SUF ¶ 43. Besides the presence of a scary elderly woman, there is nothing similar about these plots. Finding trivial similarities among a sea of differences is not evidence of copying.

### 2. The Characters Are Not Similar

Although Plaintiff has selected specific screenshots of the Film and Game in an attempt to

show similarities between the central "Granny" characters, any similarities end at unprotectable broad ideas (*i.e.*, a scary "Granny"). Indeed, after filtering out elements that necessarily stem from the raw idea of a "scary Granny," there are virtually no actual character details that are similar. Instead, the characters have numerous significant and readily apparent differences, a few of which are noted in the following annotated versions of images that Plaintiff included in the Complaint to compare the Film (left) and Game (right):

THE FILM'S "GRANNY"                    THE GAME'S "GRANNY"

 

 

The character of "Granny" in the Film is an adult man who wears a long silvery-gray wig, a blue, sleeved dress, a rubber 'Granny' mask with a closed and smiling mouth. SUF ¶¶ 26-27. He has no dialogue, and merely makes sounds. SUF ¶ 28. He silently stalks and attacks his victims

with a variety of weapons, including an axe, bare hands, a baseball bat, knitting needles, rope, and a plastic bag. SUF ¶¶ 11, 12, and 16–20. The Film follows numerous characters that are attacked by Granny over the course of the Film. SUF ¶¶ 11–20.

The character of "Granny" in the Game is an old woman with a zombie-like appearance who is apparently immortal. As shown above, her skin is dark gray; she has gray hair on the back of her head, white eyes, bloody teeth, and a filthy nightgown. SUF ¶ 44. Unlike the character in the film, there is absolutely no indication that she is a man wearing a "Granny" mask. SUF ¶ 51. Her face is stretched in a corpse-like manner to reveal a permanently gaping mouth with exposed teeth, unlike the closed smile of the mask in the Film. She does not kill any characters with an axe, knife, her bare hands, rope, a plastic bag, or knitting needles. SUF ¶ 52. The Game include several antagonists, including Granny, Grandpa, and Slendrina. SUF ¶ 42. Only the player is a victim of Granny, and the player is presented with no friends. SUF ¶ 48.

### 3. The Themes Are Not Similar

"A work's theme is its overarching message." *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), aff'd, 713 F. App'x 626 (9th Cir. 2018). Here, Plaintiff fails to allege any similarity in theme because there is not one. The Film is about someone wearing a mask as part of an elaborate prank in which he pretends to kill an entire group of friends to initiate one of the members of the group. SUF ¶¶ 24–26. Characters come to regret their actions, realizing that they have taken their prank too far. SUF ¶ 23. The Game does not explore consequences of actions, SUF ¶¶ 53–54, but instead presents a straightforward escape from the home of a demonic granny.

### 4. Pacing, Structure, Dialogue, and Setting Are Not Similar

**Setting:** The Film takes place in a modern 2-story house. SUF ¶ 29. The Game takes place in a deteriorated gothic mansion. SUF ¶ 47. The mansion of the Game is more similar in appearance to the Bates Motel of "Psycho" (1960) (*see* Ex. E) or haunted mansions of countless

other horror films than the modern house of the Film, as shown below in annotated screenshots.



**Pace:** The Film is a full-length film that proceeds at a slow pace, including numerous dialogue-heavy scenes and long gory scenes consistent with a slasher-type or psychological thriller movie. *See* Ex. B; SUF ¶ 7. The Game has a variable length and no dialogue scenes and focuses on solving puzzles while avoiding making any noises that could alert Granny to the player's location. SUF ¶¶ 6–25.

**Structure:** The Film starts and proceeds chronologically with some quick flashbacks illustrating the (fake) murders, SUF ¶ 5, whereas the Game has no flashbacks. SUF ¶ 43.

**Dialogue:** There is no dialogue in the Game beyond certain phrases from Granny as she taunts the player. SUF ¶ 45. The Granny in the Film does not have dialogue, SUF ¶ 29, but other characters have numerous scenes of dialogue, including exposition regarding the prank played. SUF ¶¶ 7–9, 13, 15, and 23–25.

Based on the above, only one conclusion reasonably can be reached: the Game is not substantially similar in protected expression to Plaintiff's Film.

## V.  THERE IS NO ISSUE OF MATERIAL FACT AS TO DVAPPS' LACK OF ACCESS TO THE FILM

Even assuming that Plaintiff could establish substantial similarity, it cannot produce sufficient evidence of DVapps' access to the Film as matter of law.

### A.    Standard for Establishing Access

Two works can be identical, but if plaintiff cannot prove copying (and therefore access), that is the end of the matter. To establish access, the plaintiff must show that the defendant had an opportunity to see the copyrighted work prior to creating the allegedly infringing work. *See Alvarez v. Industria del Amor*, Case No. 98 C 1851, 1999 WL 498610, at *3 (N.D. Ill. July 8, 1999); *Fashion Victim, Ltd. v. Sunrise Turquoise, Inc.*, 785 F. Supp. 1302, 1305 n.2 (N.D. Ill. 1992) (no access where defendant was unaware of plaintiff and its T-shirt before designing competing product). A plaintiff must show that the copyrighted work was "sent directly to the defendant . . . or a close associate of the defendant," or that that the "copyrighted work was so widely disseminated that the defendant can be presumed to have seen or heard it." *Design Basics*, 858 F.3d at 1100. If plaintiff cannot point to facts supporting access, summary judgment is appropriate.[3] Nor can a plaintiff "defeat summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendant's denial." *Nash v. CBS, Inc.*, 704 F. Supp. 823, 826 (N.D. Ill. 1989) ("In the words of the Seventh Circuit, a plaintiff must show more than a 'bare possibility,' 'conjecture' or 'speculation' of 'access.'") (citing *Selle v. Gibb*, 741 F.2d 896, 902–03 (7th Cir. 1984)).[4]

All evidence indicates that Defendant was unaware of the Film. SUF ¶¶ 33–37. Even if the Film were available online, the existence of the plaintiff's copyrighted materials on the Internet, even on a public and "user-friendly" site, cannot by itself justify an inference that the defendant accessed those materials and does not preclude summary judgment. *Design Basics*, 858 F.3d at 1107–08 (mere existence of a website without "striking similarity" cannot survive summary judgment) (citing *Cain v. Hallmark Cards, Inc.*, Civ. No. 3:15-00351-JWD-EWD, 2016 WL

---

[3] *See, e.g., Fashion Victim, 785 F. Supp.* at 1307; *Alvarez*, 1999 WL 498610, at *3–4.
[4] *See also LaFrenier v. Kinirey*, 550 F.3d 166, 167 (1st Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)); *accord. Aluminum Distribs., Inc. v. Gulf Aluminum Rolling Mill Co.*, No. 87 C 6477, 1989 WL 157515, at *8-9 (N.D. Ill. Dec. 11, 1989).

3189231, at *5 (M.D. La. June 6, 2016) (establishing a bare possibility of access is not enough).

## B. Defendant Was Unaware of Plaintiff's Film

It is well established that a copyright infringement defendant is entitled to summary judgment where he shows that he created the allegedly infringing work independently of the plaintiff's work. *See Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 860 (N.D. Ill. 2003) (granting summary judgment where "any inference of copying … has been rebutted by uncontradicted evidence that the images were independently created, rather than copied from Gentieu").[5] Mr. Vukanovic independently created the Game by himself. SUF ¶¶ 38–42. The Game's central "Granny" character was created as a family extension of Defendant's Slendrina character, not as a derivation of Plaintiff's faux murderer. SUF ¶ 40. Plaintiff can point to no facts disproving that the Game was created independently of the Film, and thus there can be no plausible claim for infringement.

## C. The Game is not Similar Enough to the Film to Infer Access

Mere existence of a copyrighted work does not indicate access. If the work is widespread enough, and well known among the public, it might be reasonable to infer access when undeniable similarities exist between works. However, courts have consistently found that for widespread dissemination to give rise to an inference of access, the allegedly infringed work must have considerable commercial success or be readily available on the market.[6]

---

[5] *See also LZT/Filliung P'ship, LLP v. Cody/Braun & Assocs., Inc.*, 117 F. Supp. 2d 745, 754 (N.D. Ill. 2000) (concluding that defendants' works "may be 'close'" to plaintiff's works, but entering judgment in favor of defendants because the allegedly infringing works "were each created independently").

[6] *See Meynart-Hanzel*, No. 17 C 6308, 2018 WL 4467147, at *6 (noting that "the mere fact that Plaintiffs placed the Sizzle Reel on YouTube does not imply broad dissemination"); *see also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (holding evidence plaintiff sold 17,000 copies of protected video in span of 13 years inadequate to establish wide dissemination); *Art Attacks Ink, LLC v. MGA Entertainment, Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (holding evidence plaintiff sold 2,000 t-shirts bearing protected design inadequate to establish wide dissemination). "The existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials." *Design Basics*, 858 F. 3d at 1108.

Here, Plaintiff does not allege how many copies of his Film he has sold or otherwise distributed, the format in which the Film was distributed, whether and how long the Film was available for retail sale, or whether there was significant distribution outside the United States. However, Plaintiff's allegation that the Film was a "cult hit" is an admission that, by definition, the film was not so widely disseminated that access should be presumed.[7] In fact, all evidence indicates that the Film was not a "hit" of any kind. The film has significantly fewer, and significantly lower, reviews on Rotten Tomatoes® ([www.rottentomatoes.com](www.rottentomatoes.com)) than an earlier horror movie featuring a supernatural elderly woman and a very similar title, *The Granny* (1995). SUF ¶¶ 65-66. And, in 2013, one reviewer was unable to find information about Plaintiff's film online, speculating that it was buried by the director due to being a terrible film. SUF ¶ 68; Ex. N. Defendant's Game is no more similar to Plaintiff's Film than it is to other better known (and more critically praised) works such as *Psycho* (1960) or *The Granny* (1995). SUF ¶¶ 56-63. Plaintiff's speculative allegations of copying are no more credible than recent online speculation that the Game was based on the real-life "Granny Ripper." SUF ¶ 67. In view of the obscure nature of its Film and more widely known "Granny" stories and films, Plaintiff cannot establish that any alleged similarities between the Game and Film are more than mere coincidence.

## VI.   <u>CONCLUSION</u>

For the reasons detailed above, this Court should grant summary judgment on Plaintiff's claims**.**

---

[7] *See* Merriam-Webster Dictionary, defining "cult" as "usually small group of people characterized by great devotion" to a work.

Dated: October 7, 2022

Respectfully submitted,

DVAPPS AB


By:  /s/ Mark A. Borsos
Mark A. Borsos
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 2100
Chicago, IL 60603
mborsos@fitcheven.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.


/s/ Mark A. Borsos

Attorney for Defendant DVapps, AB