**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMBITIOUS PRODUCTIONS, INC., | ) | |
| an Illinois Corporation, | ) | |
| | ) | Case No.:  22-cv-02088 |
| Plaintiff, | ) | |
| | ) | Judge: Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| DVAPPS AB, | ) | |
| a Foreign Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Contents

I.   **Introduction** ............................................................................................................ 1

  A.  **What Is At Issue** ............................................................................................ 1

  B.  **What Is Not Proven Beyond Genuine Issue** ................................................ 2

    1.  **Unexplained "Creation"** ....................................................................... 2

    2.  **Rigged Demonstrations** ........................................................................ 2

    3.  **Third Party References Never Connected to Creation** ........................ 2

    4.  **What Is Not At Issue** ............................................................................. 3

II.   **Arguing Differences And Ignoring Similarities Does Not Establish A Right to Judgment as a Matter of Law** ................................................................................. 4

III.   **Access and Similarity** ........................................................................................... 5

    1.  **Access** ..................................................................................................... 5

    2.  **Substantial Similarity** ........................................................................... 6

    3.  **Plaintiff's *Prima Facie* Case** ............................................................. 7

IV.   **Vukanovic Declaration** ......................................................................................... 8

  A.  **Contents and Missing Parts** ......................................................................... 8

  B.  **Self Serving Declarations Are Entitled to Low, If Any, Weight** ................. 9

  C.  **Independent Creation is Unbelievable** ...................................................... 10

V.  **While "Differences" Are a Fallacy, Some Alleged by Defendant Can Be Similarities** . 12

  A.  **Still Pictures of the Granny Character** ...................................................... 12

  B.  **Gabled, Peaked Roof Houses At Night** ..................................................... 14

  C.  **Horror and Slasher Films – Change of Pace Shows Importance of Scenes** .............. 14

  VI.   **Conclusion** ........................................................................................................ 15

Table of Authorities

## Cases

*Allen v Destinys Child* 2009 WL 2178676 (ND Ill, 2009) ........................................................ 15

*Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) .................................................................. 4

*Bright Tunes Music Corp. v. Harrisongs Music, Ltd.* 420 F.Supp. 177 (SD NY, 1976)............... 7

*Bryant v. Gordon* 483 F.Supp.2d 605 (ND Ill, 2007) ............................................................... 1

*Burrow-Giles Lithographic co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884) .......... 1

*Citizens to Preserve Overton Park, Inc. v. Volpe* 401 U.S. 402, 91 S.Ct. 8142, 8 L.Ed.2d 136 (1971) ....................................................................................................................................... 3

*Department of Homeland Security v. Regents of the University of California* ___ US ___, 140 S.Ct. 1891, 2020 WL 3271746 (2020) .................................................................................... 3

*Fred Fisher, Inc., v. Dillingham*, 298 F. 145, 147 (SD NY, 1924) .............................................. 7

*Gross v. Seligman*, 212 F. 930 (2d Cir. 1914) ......................................................................... 1

*Hobbs v. John*, 722 F.3d 1089, (7th Cir. 2013) ....................................................................... 6

*Nichols v. Universal Pictures Corporation*, 45 F.2d 119 (2d Cir. 1930) .................................... 5

*Phillips v. Astrue* 413 Fed.Appx. 878, 2010 WL 5421351 (7th Cir, 2010).................................. 2

*Rupcich v. United Food and Commercial Workers International Union* 833 F.3d 847 (7th Cir, 2016)........................................................................................................................................... 3

*S Industries, Inc. v. Stone Age Equipment, Inc.* 12 F.Supp.2d 796, 49 U.S.P.Q.2d 1071 (N.D. Ill , 1998)........................................................................................................................................... 9

*Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49 (2d Cir. 1936).............. 3, 4, 10, 12

*Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)............................................ 9

*Stratton v. Handy Button Machine Co.* 639 F.Supp. 425 (ND Ill 1986) ...................................... 2

*Tillman v. New Line Cinema Corp.*, 2008 Copr.L.Dec. ¶ 29,631 , 295 F..App'x. 840 (7th Cir. 2008)..................................................................................................................................... 5, 6

*Tillman v. New Line Cinema Corp.*, 2008 WL 687222, 2008 Copr.L.Dec. ¶ 29,523, 87 U.S.P.Q.2d 1293 (ND Ill 2008)............................................................................................... 5

*Wallace Computer Services, Inc. v. Adams Business Forms, Inc.* 837 F.Supp. 1413, 1994 Copr.L.Dec. P 27,184, 28 U.S.P.Q.2d 1857 (ND Ill, 1993) .................................................... 1

## Treatises

3 Patry on Copyright § 9:36............................................................................................................ 8

## Regulations

Compendium of Copyright Office Practices, Third Edition (1/28/2021) ...................................... 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMBITIOUS PRODUCTIONS, INC., | ) | |
| an Illinois Corporation, | ) | |
| | ) | Case No.: 22-cv-02088 |
| Plaintiff, | ) | |
| | ) | Judge: Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| DVAPPS AB, | ) | |
| a Foreign Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY**

**JUDGMENT**

I.     **Introduction**

    A.     **What Is At Issue**

    This lawsuit is about Plaintiff's movie and Defendant's video game that, when played, can display multiple scenes – moving pictures -- having both similarity in and changes in, frame by frame (1) selecting and arranging a costume; (2) background (3) composition ("present graceful outlines"); (5) light and (6) shade; (7) character's "expression" (see *Burrow-Giles Lithographic co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884); *Gross v. Seligman*, 212 F. 930 (2d Cir. 1914))  (8) pose (*Id.*)  (9) "camera angle", (10) "lighting, etc." *(Wallace Computer Services, Inc. v. Adams Business Forms, Inc*. 837 F.Supp. 1413, 1994 Copr.L.Dec. P 27,184, 28 U.S.P.Q.2d 1857 (ND Ill, 1993));  (10) "selection of cameras, lenses, filters, and a light meter" (12) selecting the subject and (13) point of view (positioning between himself and the subjects, framed the images in his viewfinder, and controlled the shutter speed and aperture settings." *Bryant v. Gordon* 483 F.Supp.2d 605 (ND Ill, 2007))   The foregoing components

involve individual images, of which 30 or more may be combined in even a one second of scene, so relative movement of all of the above is critical.

### B.     What Is Not Proven Beyond Genuine Issue

#### 1.     Unexplained "Creation"

The court is only presented with a conclusory denial of copying by Dennis Vukanovic (Vukanovic Declaration Exhibit C, Document #: 28-5 Filed: 10/07/22, paragraph 9) and the only attribution is to a different game, also subsequent to Plaintiff's movie (*Id*. paragraphs 10, 11)

#### 2.     Rigged Demonstrations

Unlike actual games – capable of being played – the appearance and timing of which responds to player input. See e.g. *Atari, Inc. v. North American Philips Consumer Electronics Corp.* 672 F.2d 607 (7th Cir. 1982) ("the player can choose" … "the player guides" … "the player can cause") each of Defendant's "play throughs" (Exhibits D-1, D-2, D-3 and D-4) are demonstrably different in even showing the still images attached to the Complaint, Exhibit 4. Instead of "fairly" representing what may appear in the games, the exhibits play throughs  can be said to be guided (as in *Atari, supra*.) to cause minimization of similarities observed.

#### 3.     Third Party References Never Connected to Creation

Defendant's Motion attempts to bring in evidence not alleged and exceeding what is appropriate for admissibility or judicial notice.  Counsel's introduction of materials missing from what Mr. Vukanovic describes in creating the infringing game are *post hoc* rationalizations. (*Phillips v. Astrue* 413 Fed.Appx. 878, 2010 WL 5421351 (7th Cir, 2010) ("These *post-hoc* rationalizations not only undermine our confidence in the accuracy of the Commissioner's representations of the record … ."); *Stratton v. Handy Button Machine Co*. 639 F.Supp. 425 (ND Ill 1986) in denying summary judgment considerations included "Baritz's inaccurate version of

Buck's resolution of the problems suggests a *post-hoc* rationalization and not a contemporaneous rationale." *Citizens to Preserve Overton Park, Inc. v. Volpe* 401 U.S. 402, 91 S.Ct. 8142, 8 L.Ed.2d 136 (1971) ("'*post hoc* rationalization' … must be viewed critically") *Department of Homeland Security v. Regents of the University of California* ___ US ___, 140 S.Ct. 1891, 2020 WL 3271746 (2020) ("… reasoning … consists primarily of impermissible "*post hoc* rationalization.") *Rupcich v. United Food and Commercial Workers International Union* 833 F.2d 847 (7th Cir, 2016) (summary judgment denied, "*post-hoc* rationalizations that are not only arbitrary but irrational and beyond unreasonable.")

Absent from Mr. Vukanovic's "creation" story are reference to the three the *post hoc* submissions by Declaration of counsel for the defense, (Document 28-1 Filed: 10/07/22) Exhibits E, J and H (*Psycho*) F ("slasher film") (*Psycho*) I and J (*The Granny* (1995)). Indeed, *Defense* Exhibit L admits that Plaintiff's movie was available and easy for Mr. Vukanovic to view, four months before he created his first infringing game. (Defense Exhibit L Document 28-14 Filed: 10/07/22 says "Release Date (Streaming) May 23, 2017") See also Exhibits 21, 22, 23, Plaintiff's Facts 102, 103, 104. Materials that preexisted before Plaintiff's 1999 movie, in various media, are absent from Mr. Vukanovic's Declaration.

### 4. What Is Not At Issue

Defendant again attempts to distract with arguments about the underlying story of the movie. For example, proposed facts 6 – 15 are not at issue. "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49 (2d Cir. 1936) Facts 16 – 25 describe an environment in which the scenes showing the infringing, similar, moving, character appear.

Second, Defendant provides Internet pages purporting to contest access and establish controlling "ideas". While references to plaintiff's movie on the Internet, including a "streaming" date before Defendant's date of creation (Exhibit L) not one of the "idea" (or trope, or *scenes a faire*) either requires or conveys the entire similar ensemble presented, in the settings, scenes and timing of even the similar parts of the movie (Exhibit B) or selectively created play throughs (Exhibits D-1, D-2, D-3 or D-4) or Exhibit 16 showing similar clips side by side.

Just as this case is not about ideas, it is not about an abstract character that, in still view is doing nothing, an abstract title (although the graphic appearance of the title pages, Exhibit 16, scene 1, brings to mind access and similarity) or the generation of the primary character. It is about scenes with the character, background, props, lighting and focus, angle and movement – and other factors recognizable in the audiovisual field.

Finally, while a large number of proposed facts list facts irrelevant to the issue of substantial similarity such as discussions before Granny appears, and the generalized idea of horror and slasher movies, the *genre* underscores the importance of surprise, which underscores the importance of fast-appearing, short scenes, without warning. *(Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.")

## II. Arguing Differences And Ignoring Similarities Does Not Establish A Right to Judgment as a Matter of Law

Defendant spends several pages arguing what is not similar. This is a basic error in a copyright case. The mere presence of differences or adding new matter does not avoid copyright infringement. *Sheldon supra.* ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.") is not an artifact. It was quoted in the *Atari, supra*, video game

case. *Nichols v. Universal Pictures Corporation*, 45 F.2d 119 (2d Cir. 1930) pointed out "It is

of course essential to any protection of literary property … that the right cannot be limited

literally to the text, else a plagiarist would escape by immaterial variations." Defendant's

Memorandum, pages 6 – 11 argues immaterial differences.

## III.    Access and Similarity

While copyright infringement legally can be summarized as "copying" which is not

limited to something like a computer user highlighting and using a "Copy" command, followed

by a "Paste" command. There are also two levels of inference of the legal conclusion of

copying: (1) access and similarity and, where access is unclear (2) striking similarity. *Tillman v.*

*New Line Cinema Corp.*, 2008 WL 687222, 87 U.S.P.Q.2d 1293 (ND Ill 2008) affirmed *Tillman*

*v. New Line Cinema Corp.*, 2008 Copr.L.Dec. ¶ 29,631 , 295 F..App'x. 840 (7th Cir. 2008).

### 1.    Access

Both the trailer and movie are registered as published works, with effective dates of

February 26, 1999 (Exhibits 1, 5, Documents 1-1; 1-5) Defendant's conclusion "Plaintiff's

theory of access rests entirely upon unsupported speculation, which is not evidence and does not

raise an issue of material fact as to Defendants' access to the Film" is belied by both Defendant's

own Exhibits (reviews, Exhibits L, N and O) and Plaintiff's Exhibits (product and packaging,

Exhibits 6, 7, 8, 9, 10, 11, IMDb reviews Exhibit 17; Amazon sales and reviews, Exhibits 18, 19,

Brezina Declaration ¶¶ 4, 5, 6; Youtube upload, Popovic Declaration ¶ 15). There would be no

reviews without access, Indeed, Mr. Vukanovic, a skilled computer user (Vukanovic

Declaration ¶¶ 5, 10) undoubtedly had access to the item his Exhibit L says was available for

streaming on May 23, 2017 only months before (Vukanovic Declaration ¶¶ 11) the first version

of the infringing game was created. While the game was available for years, the coincident

timing of the admitted streaming tends to show that access was probably acted upon by seeing the streamed version. Streaming and Internet availability is not the only evidence of access and distribution agreements that refined over time (Exhibits 13, 14 and 15) and production was in two different physical media (DVD Exhibits 6, 7, 8, 9, 10 and ll in 1999 and 2005 editions, and VHS, Exhibit 12). This is not a case where there is any fact issue about access -- unlike *Tillman, supra* ("unsupported conspiracy theories" at 6) or *Hobbs v. John*, 722 F.3d 1089, (7th Cir. 2013) -- unpublished song. See also Plaintiff;s Uncontested Facts, ¶ 1 – 16)

## 2. Substantial Similarity

Defendant exercises effort to point out minor differences in individual images. Then Defendant offers play throughs of a game or games, operated by someone and recorded by someone, that has differences. Defendant's content is contested in that Defendant fails to produce the person who created the play throughs or describe the steps in operating the controls.

Even with the rigged play throughs, similarities in important scenes are observed, Exhibit 4, Popovic Declaration, ¶¶ 5, Exhibits 4, B-1 and D-1 Popovic Declaration, ¶¶ 7 (b) (12 similar scenes in the videos[1]); Exhibits 4, B-1 and D-2 Popovic Declaration, ¶¶ 7 (b) (15 similar scenes in the videos) Exhibits 4, B-1 and D-3 Popovic Declaration, ¶¶ 7 (b) (8 similar scenes in the videos) Exhibit s 4, B-1 and D-4 Popovic Declaration, ¶¶ 7 (b) (11 similar scenes in the

---

[1] Audiovisual works are defined in the Glossary of the Compendium of Copyright Office Practices, Third Edition (1/28/2021): "Audiovisual work: "'Audiovisual works' are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101. In other words, the term "audiovisual works" refers broadly to any work that includes any series of related visual images, whether or not moving, and with or without sounds, as long as a machine or device is essential to the viewing of the related series of images."

6

videos)[2]. Exhibit 4 is still photographs, connected to the play thoughs observed in Popovic Declaration ¶ 7 b), tables one through four. Exhibit 16 adds motion and shows nine similarities (Popovic Declaration ¶ 7 c)), The differences in similarities show why the play throughs are suspect in being used for Defendant's Summary Judgment, but as admissions, they do show similarities in scenes. See also Plaintiff;s Uncontested Facts, ¶ 17 – 16. Considering all these, in combination, there is at least substantial, and it is submitted, striking, similarity.

While submitted to rebut the rebuttal of access and similarity, the Declaration of Martin L Bernstein also observes similarities. Plaintiff's Uncontested Facts ¶ 89 – 97. There are not only similarities they are so remarkable they render the claim of independent creation incredible.

### 3.    Plaintiff's *Prima Facie* Case

While the facts above show enough to prove Plaintiff's case on the merits (proof of its case), discussion of a *prima facie* case is relevant to the treatment of the conclusory claim of independent creation. Access is unquestioned and supported by both Defendant's and Plaintiff's exhibits. As described above, depending on how the game or games are played, substantial, indeed striking, similarity is present. The variability, from an infringement standpoint, may be explained by analogy: if the copyrighted work were a sound recording, Defendant wrote sheet music with dozens of similarities, it would not be a defense to infringement that a piano player might play differently, skip, rearrange, or embellish parts. Indeed, access plus even unconscious similarity can be infringing. *Bright Tunes Music Corp. v. Harrisongs Music, Ltd*. 420 F.Supp. 177 (SD NY, 1976) *Fred Fisher, Inc., v. Dillingham*, 298 F. 145, 147 (SD NY, 1924)

---

[2] The Declaration, page 5, "Granny with bat" has two references, the last digits in the time stamps should be superscripts as footnotes – the similar scenes appear twice. Additionally, the stills in Exhibit 4 panning in the basement have two stills for one scene, so each table has references that scene twice because there are two stills.

Thus, there is actionable similarity, on the merits, in a combination of character appearance, costume, features, individual images as to pose, background, lighting, color and focus as well as changes in light, dark, color, characters, scenes, props, move and the manner, direction, and timing of movement. The only "idea" – horror or slasher genre – merely emphasizes the importance of individual similar scenes where amid a background of "other" scenes, suddenly appears a moving character who pops up "out of nowhere".  Short similar scenes are important.  Lengthy, even boring, different scenes are not an excuse.

> As stated in *Atari, supra*
>
> To establish infringement a plaintiff must prove ownership of a valid copyright and "copying" by the defendant. See 3 M. Nimmer, Nimmer On Copyright s 13.01, at 13-3 (1981) ("Nimmer"). Because direct evidence of copying often is unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.

As explained in 3 Patry on Copyright § 9:36, "Independent creation is not an affirmative defense", the only weight to be given the Vukanovic Declaration is as purported evidence to negate Plaintiff's *prima facie* case. It needs to be so solidly credible and corroborated that is places the facts contained therein beyond genuine issue.  If it is not that impressive, summary judgment should be denied.   Here, there are reasons the Vukanovic Declaration should not be believed.

## IV.   Vukanovic Declaration

### A.      Contents and Missing Parts

Present in the Vukanovic Declaration are a statement he did not see Plaintiff's movie, which does not negate "access."  The whole point of proof of copyright infringement is that where either a Defendant makes conclusory, or perhaps doubtful, statements, and also that there might even be memory failure (See *Bright Tunes.supra;* "his subconscious knew it already had

worked in a song his conscious mind did not remember.") therefore access and similarity provide a sufficient basis to conclude there is copyright infringement.

Potential inconsistency may exist in the claim of "not copying." If a legal conclusion, it is not appropriate for a Declaration. But if it literally means "copy" as in "copy and paste" on a computer, that is insufficient to show non-infringement. Infringement by subconscious "copying" or preparation of a derivative work is still actionable copyright infringement.

Also notable is the complete absence of reference to any steps in creation – how the scenes have settings and characters with a certain appearance, how they move, the point of view of the game, and all the other elements of similarity identified above. We have counsel presenting documents they found on the Internet, after the Complaint was filed, but the Vukanovic Declaration considered as a whole says nothing about using those materials – indeed, the Internet materials dates of posting may post date the creation of the infringing game, so perhaps they were not even available to Mr. Vukanovic.

There may be fact inconsistencies about the place of his birth, compared to Internet information. (Exhibits 24, 25)

**B.     Self Serving Declarations Are Entitled to Low, If Any, Weight**

A self serving declaration with no corroboration is insufficient to establish material facts beyond a genuine issue. Just as Mr. Popovic's Declaration would not be enough, if he skipped the extensive analysis of cross referencing both Defendant's Exhibits and Plaintiff's, so Mr. Vukanovic's Declaration essentially "I didn't see it and I didn't do it" is insufficient to establish facts beyond a genuine issue. *S Industries, Inc. v. Stone Age Equipment, Inc*. 12 F.Supp.2d 796, 49 U.S.P.Q.2d 1071 (N.D. Ill , 1998) "… merely a self-serving document <u>without factual support in the record</u>"; *Slowiak v. Land O'Lakes, Inc*., 987 F.2d 1293, 1295 (7th Cir. 1993)

9

"Self-serving affidavits <u>without factual support in the record</u> will not defeat a motion for summary judgment.")   (emphasis added)  The court does not have enough about how Vukanovic created the games or any explanation for how the numerous similarities appear to contradict the established inference of copying.[3]   Vukanovic has not shown entitlement to Summary Judgment.

### C.    Independent Creation is Unbelievable

We have an advantage on the present record in having an experienced filmmaker, editor and part time Professor of film editing who looked at the similarities, primarily Exhibit 16. Plaintiff submits the Expert Witness Report of Martin L Bernstein, supported by Declaration, that identifies unique terms of art in the audiovisual field refers to specific still and video exhibits (primarily Exhibit 4 and 16 – and for the video correlation between Defendant's videos and Exhibit 4, see the Popovic Declaration)  and concludes there is not a reasonable basis to support the proposition that there is independent creation.

The following discussion illuminates three issues: (1) there are many visual similarities (2) there are so many similarities, independent creation cannot explain them and (3) inferentially, looking at these similarities and the movie Psycho and the "slasher" genre, one can see that neither of these requires that the scenes look the way they look.

DVapps made choices and created not only the appearance of the main character, but production design including background and scenic design and location; cinematography, including composition, lighting, color and shade, elements of perspective arranging view or camera angle (head-on, low/high angle, axis/rotation   angle, point of view, overhead, etc.); shot

---

[3] Excluding magic is not an appropriate standard.  *Sheldon supra* ("if by some magic a man who had never known it were to compose anew Keats's Ode on a Grecian Urn")

size, such as close-up, medium and long shot, motion of the subject within and between frames and motion of camera or view such as tilt, pan, dolly, zoom, crane, aerial; art direction including selection and use of costumes, props, and make-up, masks or graphic equivalents; dramatic aspects including the character's "expression", pose & directed action; editing and special effects such as rhythm and pace of change of shots, reaction, graphic design elements superimposed on action. (Bernstein Declaration; Plaintiff's Facts ¶ 90)

Similarities include:

- action in both productions takes place inside or outside of a specific location: a house with peaked roof and gables, floor levels and rooms, at a specific time of day, namely night. (Bernstein Declaration; Exhibit 4, Pages 5, 8, 9, 10, 11, 13, 15, 16, 17. ; Plaintiff's Facts ¶ 91)

- scenes with similar locations inside the house: a garage and automobile, a basement, multiple levels and stairways. (Bernstein Declaration; Exhibit 4, Pages 4, 18, 19, 20; Plaintiff's Facts ¶ 92)

- scenes with similar basement, rooms with similar props including stairs, shelves, refrigerator regularly have blood spattered over the premises. (Bernstein Declaration; Exhibit 4, Page 10; Plaintiff's Facts ¶ 93)

- art direction in what is considered costuming is similar in Plaintiff's movie and Defendant's game, including but not limited to the main character wears a grey "maxi" dress and hair and makeup (Bernstein Declaration; Exhibit 4, Pages 2, 3, 13 & 15, Plaintiff's Facts ¶ 94)

11

- similar props as weapons such as a baseball bat are similar, as are the effects of the use of same, blood splattered all over the locations and similar purpose. (Bernstein Declaration; Exhibit 4, Pages 6, 13, 14, 18, 19; Plaintiff's Facts ¶ 95)

- similar action scenes in which the stalking by Granny of her victims is similar in use of stairways inside the house between first and second levels, and basement and the automobile. . (Bernstein Declaration; Exhibit 16, scene "Evidence 4 Granny on Stairs", Exhibit 16, scene "Evidence 7 Granny Attacking with Bat", Exhibit 16, scene "Evidence Granny attacking with a weapon", Exhibit 16, scene "Evidence 13 Granny Descending Stairs", Exhibit 16, scene "Evidence 18 Granny in Car" Plaintiff's Facts ¶ 96)

- Granny's demise is similar in both Plaintiff's movie and Defendant's game - shot with a gun and left lying on the floor (Bernstein Declaration; Exhibit 16, scene "Evidence 11 Granny getting shot with a gun, Exhibit 16, scene "Evidence 12 Granny laying on floor"; Plaintiff's Facts ¶ 97)

With this many unexplainable similarities, "I didn't do it" is not believable.

**V.      While "Differences" Are a Fallacy, Some Alleged by Defendant Can Be Similarities**

Defendant urges distraction using unrelated scenes in the film.  It is not relevant what the actors do during the party before relevant scenes are presented – Defendant's Memorandum, pages 9, 10 – "… showing how much of his work he did not pirate" *Sheldon supra*. Defendant spends pages discussing irrelevant portions of the copyrighted movie.  The "set up" for the Granny character entering the scene does not provide a defense for all scenes similar in appearance, content and movement.

**A.      Still Pictures of the Granny Character**

Page 9 repeats still pictures choosing labels styled as differences.  As previously pointed

out this is not a patent case with verbal claim "elements." Indeed, changing the labels could arguably change some differences into similarities. Defendant's Memorandum shows an image with labels for differences – of course only showing stills with no movement or progress between serial images. And while differences are not a defense, merely changing the labels could make the features similar, depending on the labels:

| Defense "Differences" | Plaintiff "Similarities" Same Features |
|---|---|
| Gray Eyebrows | Eyebrows Darker than Skin |
| | Dark skin (color not particularly |
| Peach skin/Gray Skin | "gray") |
| Long hair / short hair | Loose Gray Hair |
| | Rumpled gown; has ruffles proximate |
| Long sleeved dress/ no sleeves | shoulder where "no sleeves" end |
| Rosy? Cheeks | Wrinkled cheeks |
| No? Eyebrows | Eyebrows Darker than Skin |
| | Contrasting Color Eyes and |
| White glowing eyes | sometimes glow red |
| Closed smile? | Threatening mouth |
| | Threatening mouth; teeth emphasis |
| Mouth permanently agape | horizontal axis |
| Mask? Differs from Neck | Neck dark near gown |
| Blood on chin | Wrinkled chin |

There is certainly doubt that labeling the skin is "peach", the cheeks "rosy", a "smile" is accurate, a "mask" is visible, whether hair differs in length or is behind the shoulder. Defendant's "no eyebrows" label appears incorrect because there is an arc like an eyebrow to the right of Defendant's arrow. These points are made, not because Plaintiff has a burden of identifying "elements" but because for Summary Judgment purposes, it cannot be said that genuine issues of material fact are absent. They depend on point of view.

Further, of course, the stills only compare select stills, to emphases appearance of a character, not the complete audiovisual works.

*Atari, supra* appears to apply, unedited, except for the absence of moving dots:

Defendants point to a laundry list of specific differences - particularly the concept of

13

[moving dots], the variations in mazes, and certain changes in facial features and colors of the characters - which they contend, and the district court apparently agreed, shows lack of substantial similarity. Although numerous differences may influence the impressions of the ordinary observer, "slight differences between a protected work and an accused work will not preclude a finding of infringement" where the works are substantially similar in other respects. (citation omitted) Exact reproduction or near identity is not necessary to establish infringement. "(A)n infringement ... includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy." (citation omitted) In comparing the two works, the district court focused on certain differences in detail and seemingly ignored (or at least failed to articulate) the more obvious similarities. The sine qua non of the ordinary observer test, however, is the overall similarities rather than the minute differences between the two works. Peter Pan Fabrics, 274 F.2d at 489; cf. Warner Brothers, 654 F.2d at 209-11 ("Judge Motley's opinion indicates that she properly focused upon 'the similarities not the differences' "). The nature of the alterations on which North American relies only tends to emphasize the extent to which it deliberately copied from the plaintiffs' work. (citation omitted) When analyzing two works to determine whether they are substantially similar, courts should be careful not to lose sight of the forest for the trees.

### B.    Gabled, Peaked Roof Houses At Night

Similarly, Defendant offers pictures of the houses.  This case is about audiovisual works, not architectural works.  Indeed, even asking an architectural historian or a current real estate broker might provide much different definitions of what comprises a "Victorian" house. While there are differences in the houses, coloration, angles, the presence of dormers and peaked roofs are all similar.  These are not high rises and two flats.  The appearance of these houses can be seen as similar and adding a porch or a tower does not render them sufficiently dissimilar.

### C.    Horror and Slasher Films – Change of Pace Shows Importance of Scenes

Another argued difference is "pace."   While there may be tediousness in both the movie and playing the game  the level of tediousness is not material.  However, key is that the Granny appears surprisingly, while the "background" pace is slow.   Swinging of a bat or axe (the movie has both, so arguing one or the other doesn't help Defendant) is a similar surprising "pace" – indeed, the point is to make it hard to duck.   Because scenes with Granny approaching,

14

surprisingly, and hitting, rapidly, are key to the horror genre those scenes are where judging similarity is most important. *Baxter, supra*

## VI. Conclusion

Plaintiff presents enough evidence of access and similarity to prove its *prima facie* case – point to Defendant's own exhibits as well as its own. There is no absence of genuine issues of material fact – movant's burden. Defendant's uncorroborated Vukanovic Declaration, particularly noting absence of reliance on even the post hoc findings of counsel, do not diminish Plaintiff's proof so as to create entitlement to judgment as a matter of law to Defendant. There is a wealth of important similarities in the evidence, when one looks at even Defendant's rigged play throughs, and the similarities are in important scenes. Evidence of independent creation is incredible. *Allen v Destinys Child* 2009 WL 2178676 (ND Ill, 2009) stated:

> "[C]ourts are constrained in making credibility determinations at the summary judgment stage," * * * However, the Songwriter Defendants have not come forward with any objective evidence of this process, despite the fact that all three individual members of Destiny's Child testified that they wrote draft lyrics on paper during the creative process. (citation omitted) <u>Because the defense of independent creation depends on a determination of the credibility</u> of Knowles, Rowland, and Williams, <u>the court cannot find that the</u> Songwriter <u>Defendants prevail in this defense as a matter of law</u>." (emphasis added)

Summary Judgment here should be denied.

Respectfully submitted,

/David C Brezina/
David C. Brezina

Date: ___February 17, 2023___

David C. Brezina
Burton S. Ehrlich
Ladas & Parry LLP
224 South Michigan Avenue
Suite 1600
Chicago, Illinois 60604
312 427-1300

15

312 408-2532 (direct)

## CERTIFICATE OF SERVICE

I hereby certify that I shall, this 17th day of February, 2023, electronically file the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record, believed to comprise the following:

Hassan Elrakabawy
Steven Douglas Smelser
Yukevich Cavanaugh
355 S. Grand Ave.
15th Floor
Los Angeles, CA 90071

Mark Andrew Borsos
Joseph T. Nabor
Fitch, Even, Tabin & Flannery
120 South LaSalle St.
Suite 1600
Chicago, IL 60603-3406

Date:  February 17, 2023               /David C. Brezina/

David C. Brezina